UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CHARLES W. BAKER,               )
                                )
        Plaintiff,              )
                                )        No. 5:13-CV-370-REW
v.                              )
                                )        MEMORANDUM OPINION AND
CAROLYN W. COLVIN, ACTING       )               ORDER
COMMISSIONER OF SOCIAL          )
SECURITY,                       )
                                )
        Defendant.              )
                                *** *** *** ***

        The Court considers cross-motions for summary judgment under the District's standard

briefing protocol. Plaintiff/Claimant, Charles W. Baker, by counsel, appeals the Commissioner's

denial of SSI benefits. The overall issue is whether substantial evidence supported the ALJ's

factual decisions, as required by 42 U.S.C. § 405(g). The Court **GRANTS IN PART** Plaintiff's

motion for summary judgment (DE #20). The Court **GRANTS** the motion insofar as the ALJ did

not adequately justify his treatment of Dr. Abadilla or properly phrase his hypothetical to the VE,

**REVERSES** the decision of the Commissioner, and **REMANDS** the case for proceedings

consistent with the opinion herein. The Court **DENIES** the balance of the motion.  The Court

thus **GRANTS IN PART** Defendant's motion for summary judgment (DE #21). As discussed,

the Court partially affirms the Commissioner's determinations as properly supported and legally

appropriate.

## I.  Relevant Facts and Procedural Overview

        Charles Baker filed an application for supplemental security income (SSI) benefits on

December 9, 2010. In the application, Baker alleged a disability beginning on July 13, 2006. The

1

Social Security Administration denied the claim on March 3, 2011, DE #16-4 at 122, and that agency again denied the claim on Baker's request for reconsideration. *Id.* at 129.  Baker then requested a hearing pursuant to 20 C.F.R. § 416.1429 *et seq.*, and Administrative Law Judge (ALJ) Greg Holsclaw conducted a video hearing on August 17, 2012. DE #16-3 (Hrg. Tr.) at 29-67. Baker testified at the hearing, in addition to Robert Piper, an independent vocational expert (VE). Following the hearing, the ALJ denied Baker's claim for benefits.

In evaluating Baker's disability claim, the ALJ conducted the recognized five-step analysis. 20 C.F.R. § 416.920. The ALJ first determined that Baker had not engaged in substantial gainful activity, a defined term, since December 9, 2010, the application date. DE #1-1 (Notice of Decision) at 6. Next, the ALJ found that Baker presented 7 severe impairments: (1) adjustment disorder; (2) peripheral vascular disease; (3) history with mesh placement; (4) osteoarthritis of the shoulders, knees, and elbow with multiple knee surgeries; (5) degenerative disc disease of cervical and lumbar spine; (6) diabetes mellitus with neuropathy; and (7) depression. *Id.* In the third step, the ALJ determined that Baker's severe impairments were not "attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." *Id.* at 7.  In considering Baker's residual functional capacity (RFC) (step 4), the ALJ concluded that Baker had the residual functional capacity "to perform less than the full range of light work" and made specific findings as to Baker's RFC. *Id.* at 8-12. Finally, the ALJ found that, in light of Baker's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Baker] can perform." *Id.* at 13. The ALJ thus concluded that Baker had not been under a disability, as defined in the Social Security Act, and denied the application. *Id.* at 14.

Baker, by counsel, timely filed for review with the Appeals Council, which denied relief. DE #16-3 (Admin Tr.) at 1-5 (notice from Appeals Council denying request for review). Baker subsequently filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g).  Baker moves for summary judgment on three enumerated grounds: (1) the ALJ relied improperly on Dr. Swan, (2) the ALJ improperly failed to credit Baker's treating physician's RFC, and (3) the ALJ's hypothetical question posed to the vocational expert failed to include all of Baker's impairments. DE ##20, 20-1 (Motion), (Memorandum). The Commissioner filed a cross-motion for summary judgment. The motions stand ripe and ready for review.

## II. Standard of Review

Judicial review pursuant to § 405(g) is narrow. The Court confines itself to determining whether substantial evidence supported the ALJ's factual rulings and whether the Secretary properly applied the relevant legal standards. 42 U.S.C. § 405(g); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Per the Social Security Act's express terms, the Commissioner's findings are conclusive as to any fact supported by substantial evidence. 42 U.S.C. § 405(g); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). Substantial evidence is more than a mere scintilla and is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Perales*, 91 S. Ct. at 1427); *see also Osborne v. Colvin*, No. 0:13-CV-174-EBA, 2014 WL 2506459, at *3 (E.D. Ky. June 3, 2014) (applying standard).

Given the limited nature of substantial evidence review, the Court does not try the case *de novo*, make credibility determinations, or resolve conflicts in the evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Indeed, if

substantial evidence exists to support the ALJ's decision, the reviewing court must affirm the ALJ "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotation marks omitted). The deferential standard creates for the Commissioner a "zone of choice," which, assuming adequately supportive evidence, is immune from Court interference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Baker raises three distinct issues in an effort to impeach the ALJ's determination. He claims improper reliance on a state examiner, improper failure to credit his treating doctor's assessment, and improper VE hypothetical formulation. The Court agrees in part with Barker's arguments.

**III. Analysis**

*1.   The ALJ did not err by relying on Dr. David Swan, a state agency non-examiner.*

Plaintiff contends that the ALJ erred in crediting the opinions of Dr. David Swan, a state agency non-examining physician. DE #20-1 (Memorandum) at 10-12. Specifically, Baker challenges Dr. Swan's qualification to evaluate Plaintiff's disability in the field of orthopedics based on Dr. Swan's alleged board certification in obstetrics and gynecology.[1] Additionally, Baker questions Dr. Swan's truthfulness and veracity. *Id.* at 11. In support of his argument, Baker tenders an unauthenticated copy of *Sneed v. Stovall*, No. W2003-00779-COA-R3-CV (Tenn. Ct. App. April 1, 2004). DE #20-2 (Opinion).

---

[1] Dr. Swan's board certification does not appear in the record. The Commissioner does not contest Baker's characterization of Swan's certification. At least, no one cites to it and the Court has not found it.

Defendant responds that a physician's specialty is only one of the relevant factors the ALJ considers when weighing medical opinions. DE #21 (Response) at 3. Additionally, the Commissioner defends the ALJ's decision to consider Dr. Swan's opinion "because it is consistent with the record as a whole[.]" *Id.* at 4. Per Defendant, the Court should disregard the Tennessee Court of Appeals decision tendered by Plaintiff because the opinion is "extra-record evidence," and thus outside the scope of judicial review. Finally, the Commissioner alleges that Plaintiff does not show cause for failing to raise the arguments relative to Dr. Swan before the ALJ. *Id.*

Extra-record evidence is not a basis for summary judgment thought it may provide a basis for remand. "To secure a remand for the consideration of new evidence, Plaintiff must show that the evidence is material and that good cause existed for the failure to produce the evidence in the prior proceeding." *Kokal v. Massanari*, 163 F. Supp. 2d 1122, 1136 (N.D. Cal. 2001) (citing § 405(g) and *Booz v. Secretary of Health & Human Servs.,* 734 F.2d 1378, 1380 (9th Cir. 1984)). The new evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's decision." *Id.*

The implementing Social Security regulations describe 6 factors the agency uses to "weigh medical opinions." 20 C.F.R. § 416.927(c)(1)-(6). Said factors include the examining relationship, the treatment relationship, the length of treatment relationship and frequency of examining relationship, the nature and extent of the treatment relationship, consistency of the opinion as compared to the overall record, specialization, and a miscellaneous category of other factors. *Id.* With respect to specialization, the regulation states: "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Id.* § 416.927(c)(5). Further, while noting that

5

ALJs are not bound by the findings of a state agency physician, the regulation describes such individuals as "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *Id.* § 416.927(e)(2)(i). Thus, the ALJ must consider the findings and opinions of these individuals as "opinion evidence." *Id.*; *see also Cartwright v. Colvin*, No. 4:13-CV-98-HBB, 2014 WL 1248015, at *4 (W.D. Ky. 2014) (noting that the opinions of non-examining physicians are not assessed for controlling weight and stating: "[T]he Administrative Law Judge 'weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability[.]'" (internal quotation marks and citation omitted)).

Here, the record indicates that Dr. Swan completed an RFC or assessment on July 12, 2011. *See* DE #16-3 at 98-100; DE #16-4 at 101-118. Dr. Swan's evaluation determined that Baker was not disabled. DE #16-4 at 117. Baker offers nothing other than pure speculation to conclude that Dr. Swan's board certification in obstetrics and gynecology precludes him from issuing a qualified opinion. Indeed, Claimant references only: "commonsense facts that the training of a gynecologist in no way addresses the type of impairments this claimant suffers. Therefore, it is logical to conclude that Dr. Swan is unqualified to issue an opinion if he has not even had the benefit of examining the claimant." DE #20-1 (Motion) at 11. This uncorroborated statement falls far short of establishing ALJ error. Baker cites no legal authority, only "commonsense facts," in support of his assertion. As such, Baker has failed to fully argue the claim. *See Moore v. Comm'r of Social Sec.*, No. 13-6654, 2014 WL 3843791, at *3 (6th Cir. 2014) (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

6

leaving the court to . . . put flesh on its bones.")). Further, Claimant offers nothing to show that the ALJ gave Dr. Swan's RFC improper weight. Simply put, Baker's uncited speculation about Dr. Swan's qualifications (or, more accurately, lack thereof), to conduct the RFC utterly fails to meet his burden of showing that the ALJ improperly relied on Dr. Swan. It is notable that Baker does not impeach what Swan said or his method of analysis.  Rather, Claimant seeks to bar Swan from opining, categorically, based on a strict specialization rule.  Such a rule would transgress the regulation that defines and governs opinion weight.  As such, the argument fails.[2]

Further, to the extent Claimant questions Dr. Swan's truth and veracity, such evidence is extra-record evidence raised, even worse, through an unverified state record. *See* DE #20-2. The argument rests on an unauthenticated foreign state document. Further, Baker offers no evidence proving that the Dr. Swan who completed an RFC in this matter is, in fact, the same Dr. Swan named in the appended Tennessee decision. The argument is unavailing and deserves no further discussion.[3]

2.  *The ALJ inadequately justified his rejection of Dr. Abadilla's assessment.*

Baker next alleges that the ALJ failed to adequately consider the opinion of one of his treating physicians, Dr. Abadilla. DE #20-1 (Memorandum) at 12.  In his ruling, the ALJ stated:

> The undersigned has accorded little weight to the opinion of Dr. Abadilla at Exhibit F13F and F14F/2 showing less than sedentary lifting, which was contradicted by the claimant's testimony regarding his daily activities and social functioning, such as those discussed above including retaining ability to do work on household and remodeling chores.

---

[2] Notably, the ALJ simply cited to the Agency physicians as "further support[ing]" his analysis. The ALJ expressly treated those Agency assessments within the confines of the opinion weight regulation—considered but not controlling.  DE #1-1 (Notice of Decision) at 12.

[3] Baker also fails to show good cause for his failure to raise either issue at the hearing, a predicate to remand.

DE #1-1 (Notice of Decision) at 12. The Commissioner defends the ALJ's reasoning as adequate under the implementing regulations.

"An ALJ gives 'controlling weight' to a treating physician's opinion if the opinion 'is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Maloney v. Comm'r of Soc. Sec.*, 480 Fed. App'x 804, 808-09 (6th Cir. 2012) (quoting 20 C.F.R. § 404.1527(d), (d)(2)).[4] The Sixth Circuit has stated the contours of the treating physician rule:

> The agency promises claimants that it will give more weight to the opinions of treating sources than to non-treating sources. 20 C.F.R. § 404.1527(d). The opinions of treating physicians carry more weight because they likely provide "a detailed, longitudinal picture" of the claimant's medical impairment(s) that cannot be obtained from objective medical findings alone or from reports of consultants' examinations. [*Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)] An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *Blakley,* 581 F.3d at 406. However, a doctor's opinion that a patient is disabled from all work may invade the ultimate disability issue reserved to the Commissioner and, while such an opinion could still be considered, it could "never be entitled to controlling weight or given special significance." SSR 96-5p. 1996 WL 374183, at *5 (July 2, 1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work[.]' . . . Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner."); 20 C.F.R. § 404.1527(e)(1).

> If the ALJ decides not to give a treating physician's opinion controlling weight, the ALJ may not reject the opinion but must apply other factors to determine what weight to give the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

[4] As Baker seeks supplemental security income (SSI), the applicable regulation for the treating physician rule is 20 C.F.R. § 416.927(c). However, the rule, as applied to social security benefits, is identical. *See* 20 C.F.R. § 404.1527(c). Thus, although the Court applies § 416.927(c) here, the Court properly relies on cases interpreting § 404.1527(c). *See DeBlois v. Astrue*, No. 07-11685, 2008 WL 248836, at *5 (D. Mass. 2008) (describing § 416.927 as to the "cognate rule" to § 404.1527); *see also Part II – Evidentiary Requirements*, SSA.gov, http://ssa.gov/disability/professionals/bluebook/evidentiary.htm (noting that "medical evidence is the cornerstone of the disability determination under both the title II and title XVI programs" and indiscriminately describing treating source rule).

supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]" *Wilson*, 378 F.3d at 544 (citing § 404.1527(d)(2)). If benefits are denied, the ALJ must give "specific reasons for the weight given to the treating source's medial opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); [*Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)] (citing Rule 96-2p for the proposition that all cases carry a rebuttable presumption that a treating physician's opinion "is entitled to great deference, its non-controlling status notwithstanding").

*Minor v. Commissioner of Social Sec.*, 513 Fed. App'x 417, 437 (6th Cir. 2013). To justify giving a treating physician's opinion "less than controlling weight," the ALJ must state "good reasons." *Id.* "'Good reasons'" are those "'supported by the evidence in the case record'" and "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight.'" *Melton v. Astrue*, No. 11-305-KSF, 2012 WL 1933731, at *3 (E.D. Ky. May 29, 2012) (quoting *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011)). If the ALJ fails to articulate good reasons for rejecting the treating physician's opinion, the reviewing court must reverse and remand to the Commissioner, "even if substantial evidence otherwise exists in the record to support the Commissioner's decision." *Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. App'x 563, 569 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543 (6th Cir. 2004) ("Because the ALJ, by failing to articulate reasons for discounting the opinion of Wilson's treating physician, violated the agency's own procedural regulation, we vacate the judgment of the district court affirming the ALJ decision and remand for further proceedings consistent with this opinion.").

The ALJ's treatment of Dr. Abadilla's opinions is concerning and at odds with the governing regulation. Dr. Abadilla has treated Claimant since, at the latest, 2007. The medical record includes multiple encounters over a lengthy period of treatment. *See* DE #17-4 (Medical

Records) at 927-1007 (Dr. Abadilla records from 2007 to 2010); DE #17-5 (Medical Records) 1180-1216.  As of November 2010, when Dr. Abadilla completed his assessment, he determined particular functional limitations premised on Baker's osteoarthritic knees and cervicalgia. *See id.* at 923.

The ALJ discounted the opinion of Abadilla allegedly based on empirical conflict between Baker's hearing testimony and Dr. Abadilla's opinions. The doctor viewed Baker as unable to sit or stand for more than 2 hours in an 8 hour period. He also determined that Baker's occasional lifting limit was less than 10 lbs.

First, the ALJ overstates what Baker testified he did or could do. The Claimant testified to "occasionally" mowing his grass, a job that took 3 hours with breaks. DE #16-3 (Hrg. Tr.) at 47-48. Baker specifically stated that he must stop during this occasional task. This hardly conflicts with Abadilla's view. Further, the record does not substantially support the ALJ's focus on Baker's involvement in home remodeling. The testimony was that Baker cut **one piece** of trim (an act that resulted in a laceration). DE #16-3 (Hrg. Tr.) at 48.  The only testimony as to Baker overdoing it involved him potentially moving some of his wife's personal effects or furnishings in advance of or because of remodeling. *Id.* at 49. This does not contradict Abadilla and indeed, whatever Baker did in June of 2011, it resulted in a follow-up to Dr. Abadilla. DE #17-5 (Medical Records) at 1204. Fixing a leaky sink at home (which occurred one time in the six months before the hearing, DE #16-3 (Hrg. Tr.) at 48) does not conflict with Abadilla's view about what Baker could do over a regular workday as an employee.[5] Further, Claimant estimated his lifting at 10-15 lbs. on a good day and 8 lbs. on a bad day. This was not in the context of "occasional" or "frequent" work-related lifting and carrying. Again, casting this as in conflict

---

[5] The repeated reference to Shriner's membership is of unexplained import.  The nature, frequency, intensity, and demands of such a meeting do not appear in the record.

with Abadilla's views strains the record. These are the things the ALJ cited, and the bases for assessing Abadilla's opinion are lacking.

The Court also notes that the discounting of Abadilla focuses on lifting, while Abadilla also clearly put significant (and perhaps disabling) limits on Baker's standing and sitting. The ALJ did not remark on these critical aspects of Abadilla's report. Further, rejecting Abadilla based on Claimant's social functioning makes little sense; Abadilla did not premise his restrictions on social functioning limitations.

Most troubling, perhaps, is that the ALJ rejected Abadilla without walking through the regulation's clearly assured analysis with respect to a treating source. The regulation promises consideration of all of the § 416.927(c)(2) factors with respect to a treating source.  It seems that here, the ALJ focused on perceptual distinctions, rejected Abadilla out of hand, and moved forward analytically without taking into account the full record of Abadilla's treatment and basis for opinion.

The Court notes that the ALJ seemed unfamiliar with Abadilla's report at the time of the hearing. DE #16-3 (Hrg. Tr.) at 62 (questioning counsel's "basis for" the limitation posed by counsel to the VE, prompting counsel to cite to Abadilla). Further, the ALJ inaccurately remarked in the decision, twice, that "no physician of record has ever said the claimant is disabled, DE #1-1 (Notice of Decision) at 9, seemingly ignoring Abadilla's input. *See* DE #17- (Abadilla functional evaluation) at 1223. The determination of disability is for the Commissioner, but failing even to acknowledge a treating source's opinion on the topic erodes confidence in the ALJ's decisional process and basis.

The ALJ acknowledged that Baker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," DE #1-1 (Notice of Decision) at 8, yet

discounted the credibility of Baker's symptom descriptions. Swan's endorsement of prior adjudicated limitations, which the ALJ essentially adopted, apparently also did not take into account Abadilla's views. While Swan indicates receipt of some records from Abadilla, the report does not register an opinion from Abadilla. *See* (Swann Report) at 102 (referencing Abadilla but indicating "no" in opinion listing). This creates concern that not only the ALJ but also Swan, the key physician opinion relied on by the ALJ, did not reflect the treating doctor's views. Abadilla continued to treat Baker throughout 2011 and 2012, reflecting nearly bi-monthly care and the consistent diagnosis of bilateral knee pain, osteoarthritis and cervalgia, all in harmony with the November 2010 formal assessment. It is just this type of close, treatment based, longitudinal view that sets the treating physician apart in the regulatory hierarchy. *See* 20 C.F.R. § 416.927(c)(2) (noting a treating physician's ability to provide a "detailed, longitudinal picture" of a claimant's medical impairments).

The ALJ dismissed the views of Dr. Abadilla far too cavalierly. The regulation requires care and deliberation when assessing the presumably well-founded views of a treating source. The Commissioner attempts to contrast Abadilla's views with the full overall record, but concedes that the ALJ did not, himself, draw that contrast. DE #21 (Motion) at 7 ("While the ALJ did not explicitly state he was rejecting Dr. Abadilla's opinion because it is inconsistent with the record[. . . .]"). Here, the ALJ gave unjustified and unexplained short shrift to Dr. Abadilla's input. This calls for remand.[6]

---

[6] The gap-laden record heightens the requirement for remand. In multiple, critical spots, the record failed for reasons that are not entirely clear. Thus, where the Claimant states his own lifting ability DE #16-3 (Hrg. Tr.) at 24, where the ALJ formulates the key hypothetical, *id.* at 59, and where the VE shares opinions about available work. *Id.* at 60-62. There should be no guess-work in review of the Commissioner's ultimate decision, and here, the Court cannot fairly and accurately assess what the ALJ confronted where key verbiage is absent. The ALJ should

3. *The ALJ's hypothetical did not include the limitations he expressly found applicable and thus failed to adequately describe Baker.*

Baker's final claim is that the hypothetical the ALJ posed to the vocational expert (VE) during the hearing did not accurately include all of Claimant's limitations. DE #20-1 (Memorandum) at 14.  The Commissioner defends the hypothetical as sufficient. DE #21 (Motion) at 10-11.

An ALJ's hypothetical question need only incorporate those limitations that the ALJ has deemed credible. *Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582, 585 (6th Cir. 2010). Credible limitations must be supported by substantial evidence. *See Williams v. Colvin*, No. 7:13-CV-98-JMH, 2014 WL 1513181, at *5 (April 16, 2014) (citing *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) ("There is substantial evidence in the record that the two hypothetical questions posed by the ALJ accurately portrayed [plaintiff's] credible limitations.')). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podeworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

In Step 3, the ALJ found "moderate" limitations with respect to "concentration, persistence and pace." DE #1-1 (Notice of Decision) at 8. As the ALJ noted, this was an assessment of the "paragraph B" criteria. *See id.* This assessment "is used in steps 2 and 3 to determine whether an impairment is 'severe' and whether the impairment meets or medically equals a listed impairment, *see* [*id.*], 20 C.F.R. §§ 404.1520a(d), 416.920a(d), and is functionally

---

revisit those areas, taking supplemental or clarifying testimony as needed, and assure that the record is complete and the decisional basis fully reviewable.

separate from the mental RFC assessment used as Steps 4 and 5. *See* SSR 96-8p, 1996 WL 374185 (Jul. 2, 1996).” *Bailey v. Astrue*, No. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011).

The record is unclear, though the Court assumes that the ALJ used the terminology of Emily Skaggs, Licensed Clinical Psychologist, whom the ALJ credited: “moderate limitation in [Baker’s] ability to sustain attention and concentration for simple repetitive tasks.” DE #1-1 (Notice of Decision) at 11; *see also* DE #17-5 (Tr.) at 1151. The ALJ also opined that Ms. Skaggs found “slight (mild limitations, can generally function well) limitation in [Baker’s] capacity to understand, remember, and carry-out instructions for simple repetitive tasks.” DE #1-1 (Notice of Decision) at 11; *see also* DE #17-5 (Tr.) at 1151. Skaggs treated moderate as “still able to function satisfactorily.” DE #1-1 (Notice of Decision) at 8. The ALJ plainly intended to include his Step 2 and 3 analyses in the RFC calculus. *See* DE #1-1 (Notice of Decision) at 8 (“Therefore, the following residual functioning capacity assessment reflects the degree of limitation the undersigned has found in the ‘paragraph B’ mental function analysis.”).

During the hearing, the ALJ posed one general hypothetical before posing more specific follow-up hypothetical questions:

> Assume a hypothetical person who is the same age, education, and work experience as the Claimant. This hypothetical person can do a limited range of light exertional work that is (INAUDIBLE) carry more than 20 pounds occasionally, 10 pounds frequently; standing and walking for more than – excuse me, no standing and walking more than two hours each, two hours each, [*sic*] for no more than 30 minutes at one time without interruptions; sitting more than six hours out of an eight-hour day, no more than 45 minutes at one time; person can do frequent pushing pulling at the exertional limitations, upper extremities; no operation of foot controls; no more than frequent fine fingering manipulation bilaterally; no climbing of ladders, ropes and scaffolds; occasional climbing of ramps or stairs; no more than occasional stooping or balancing; no kneeling, crouching, crawling; limited to simple, routine, entry-level work; only occasional changes in the work setting; no requirement for problem-solving, goal setting or

independent thinking. Could such a person be able to perform any of the past relevant work previously identified?

DE #16-3 (Hrg. Tr.) at 60.

Courts in the Sixth Circuit are split on the issue of whether a hypothetical that limits a claimant to "simple, routine, unskilled work" adequately encompasses moderate limitations on concentration, persistence, or pace. In *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010), the Court found that the ALJ's "streamlined" hypothetical did not include speed- and pace-based restrictions. The *Ealy* Court relied, in part, on *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005), which held:

> [W]hile finding that Plaintiff has a 'moderate limitation in her ability to concentrate, persist and keep pace," the ALJ's limitations were with co-workers, supervisors and the public, and to 'jobs entailing no more than simple, routine, unskilled work.' While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. The current hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence, and pace for this Court to have any idea as to the number of the assembly, packing and sorting or security guard jobs identified by the VE that would be excluded if quotas or other aspects related to moderate concentration limitations were added to the hypothetical question. Each of these jobs seems to require a degree of sustained concentration, persistence and pace.  The ALJ's argument that Plaintiff's daily watching of television is not sufficient evidence on this record to conclude her concentration is not significantly impaired. Thus, the ALJ's hypothetical question is insufficient.

*Id.*

Baker argues that *Ealy* means that limiting a claimant to "simple, routine, entry-level work" does not adequately account for his moderate difficulties in persistence, pace and concentration. Not every court to consider the similar issue has extended *Ealy/Edwards*. Indeed, "numerous courts have refused to apply *Ealy* in the manner [Baker] advocates]. *Mallot v. Colvin*, No. 5:13-CV-305-DCR, 2014 WL 2574520, at *8 (E.D. Ky. June 9, 2014) (collecting cases); *see also Oliver v. Colvin*, No. 2:12-CV-480, 2014 WL 710101, at *5 (E.D. Tenn. Feb. 21, 2014)

15

(declining to extend *Ealy* on similar record); *Shaffer v. Colvin*, No. 2:12-CV-432, 2014 WL 1207534, at *8 (E.D. Tenn. March 24, 2014) (same) (collecting cases). *But see Williams v. Colvin*, No. 7:13-CV-98-JMH, 2014 WL 1513181 (E.D. Ky. April 16, 2014) (reversing Commissioner's decision and remanding based upon hypothetical that failed to expressly include claimant's "moderate limitations on concentration, persistence and pace").

Here, as in *Ealy*, the ALJ expressly adopted a limitation but failed to include or reflect same in the hypothetical posed to the vocational expert. *See Ealy*, 594 F.3d at 516-517; *see also Mallot*, 2014 WL 2574520, at *7-*8 (discussed *Ealy*). An ALJ's hypothetical must fairly encompass the determined limitations, and here thus must account for the moderate limitations on pace, persistence, and concentration the ALJ adopted. The hypothetical does not do so under the teachings of *Ealy*.

Whether the Court would remand on the issue independently is a close call, but as the Court remands the case for further consideration of Dr. Abadilla, and record clarification, *see supra* note 7, the ALJ should revisit this testimony and ensure that the hypothetical presented accounts for the moderate limitations found. The ALJ should reformulate the hypothetical to account for these issues in a manner that ensures that the VE can fairly account for all relevant issues in assessing the presence of available work.

## IV. Conclusion

Having considered the full record, and for the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's motion for summary judgment (DE #20). The Court **GRANTS** the motion to the extent it seeks a remand premised on the ALJ's treatment of Dr. Abadilla and the formulation of the VE hypothetical. Any rehearing must clarify and cure record gaps that repeatedly weaken the current transcript. The Court **REVERSES** the Commissioner's decision

16

and **REMANDS** the matter for proceedings consistent with the opinion herein. The Court

**DENIES** the balance of the motion. Accordingly, the Court **GRANTS IN PART** Defendant's

motion for summary judgment (DE #21). The Court will enter a separate judgment.

This the 17th day of March, 2015.

Signed By:

*Robert E. Wier*

United States Magistrate Judge